IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRONTLINE COMMUNCIATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC; and DOES 1 through 30, inclusive, <br><br> Defendants. | Case No. <br><br><br> Dated: November 1, 2013 |

## COMPLAINT

Plaintiff, Frontline Communications, Inc., by its undersigned attorneys, The Miller Law Firm, P.C., and The Law Office of Scott C. Polman, hereby complains against defendants Comcast Corporation and Comcast Cable Management, LLC as follows:

### Parties

1. Plaintiff Frontline Communications, Inc. ("Frontline") is an Illinois corporation with offices located in Illinois and Florida.

2. Defendants Comcast Corporation and Comcast Cable Management, LLC ("Comcast") are Pennsylvania corporations with offices throughout the United States.

3. Plaintiff is ignorant of the true names and capacities of the Defendants used herein as DOES 1 through 30, inclusive, and therefore sues these Defendants by these fictitious names. Plaintiff will amend this complaint to allege their true names and capabilities when/or if

1

ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages and/or other harm as herein alleged were proximately caused by their conduct.

### Jurisdiction and Venue

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Frontline and Comcast are citizens of different states, and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this complaint occurred in this district.

### General Allegations

5. Frontline is in the business of installing and servicing cable television services in the states of Illinois and Florida.

6. Comcast is a telecommunications provider company that provides cable, entertainment, and communication products and services throughout the United States.

7. Comcast utilized the services of Frontline at all times pertinent hereto.

8. In December of 2009, Frontline received a "Preferred Vendor Agreement for Broadband Installation/Disconnections/Construction" (hereinafter "PVA") contract from Comcast.

8. In January of 2009, the parties executed the PVA, attached hereto and incorporated herein as Exhibit 1. The PVA created the basis of the relationship between the parties, which was periodically thereafter supplemented with Statements of Work (hereinafter SOW") .Through the SOW, Frontline, received the work to be completed from Comcast.

9. Thereafter, Comcast required Frontline to meet certain qualitative and quantitative performance objectives in order to continue receiving work from Comcast as well as to maintain its contract with Comcast.

10. In fact, Comcast held weekly meetings with Frontline and other contractors in order to review performance in an ongoing effort to determine which contractor(s) would continue to receive work from Comcast.

11. Further, Comcast advised Frontline that the contract would be terminated if these weekly performance metrics were not met.

12. Pursuant to these weekly meetings, Frontline reported performance metrics that consistently exceeded the requirements set by Comcast in order to maintain its contract.

13. Contrary to these weekly meeting, Comcast executives acting in their own self interest, privately solicited payments from Frontline in order to guaranty continual and ongoing work from Comcast despite the stated performance objectives.

14. On information and belief, Comcast executives in Illinois accepted cash, gifts, and other benefits as part of the decision making process in deciding which contractors would continue to receive work and which contractors would be terminated, and thus a "pay for play" scheme existed at Comcast.

15. Frontline refused on several occasions pay the requested bribes to Comcast executives and partake in this "pay for play" scheme.

16. Consequently, Frontline was terminated in November 2011 because of its refusal to engage in Comcast executives "pay for play" scheme.

## Count I
## Civil Conspiracy

17. Frontline incorporates by reference all preceding paragraphs.

18. Civil Conspiracy is an action for injuries caused by a tortious act in furtherance of an agreement among two or more persons for the purpose of accomplishing some concerted action. Extensive common law exists. *See Fritz v. Johnston,* 209 Ill.2d 302, 807 N.E.2d 461, 282 Ill.Dec. 837 (2004); *McClure v. Owens Corning Fiberglas Corp.,* 188 Ill.2d 102, 720 N.E.2d 242, 241 Ill.Dec. 787 (1999); *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 645 N.E.2d 888, 206 Ill.Dec. 636 (1994); *Karas v. Strevell,* 227 Ill.2d 440, 884 N.E.2d 122, 318 Ill.Dec. 567 (2008).

19. The elements of civil conspiracy are as follows: (1) An agreement between two or more persons; (2) The agreement was to participate in either an unlawful act or a lawful act in an unlawful manner; (3) An injury caused by an unlawful overt act performed by one of the parties; (4) The overt act was done pursuant to and in furtherance of the common scheme. *Canel & Hale, Ltd. v. Tobin,* 304 Ill.App.3d 906, 710 N.E.2d 861 (1st Dist. 1999).

20. Chicago Comcast executives Duane Gibbs and Dino Magnos, Brian Mark and Joe Browning conspired together out of their own self interests to award work to the contractors based on the solicitation of cash, gifts, and other benefits rather than the performance metrics set forth in the contract between the parties.

21. Not only was this "pay for play" scheme a violation of the contract and a misrepresentation of the business relationship between the parties, but it was also an agreement to participate in an unlawful act (i.e., cash for contracts or "pay to play").

22. Importantly, the court in *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 645 N.E.2d 888, 206 Ill.Dec. 636, 643 (1994), noted the following:

4

when the trial court denied Owens-Corning's motion to dismiss the complaint under section 2-615, it was undoubtedly aware of the fact that conspiracies are often purposefully shrouded in mystery. Such actions, by their very nature, do not permit the plaintiff to allege, with complete particularity, all of the details of the conspiracy or the exact role of the defendants in the conspiracy. In fact, a conspiracy is rarely susceptible of direct proof; instead, it is established from circumstantial evidence and inferences drawn from evidence, coupled with commonsense knowledge of the behavior of persons in similar circumstances. A plaintiff cannot be required to plead with specificity the very facts that can only be proven by circumstantial evidence. More importantly, a plaintiff is not required to allege facts with precision where the necessary information to do so is within the knowledge and control of the defendant and unknown to the plaintiff.

23. In late December 2009, during a social event at Dave and Busters in Addison, Illinois, Duane Gibbs, senior director for Comcast in the Chicago market, demanded a payment of $40,000 from John Urso, Frontline's vice president of operations, for the purpose of insuring that Frontline would receive continual and ongoing work from Comcast after January of 2009.

24. Duane Gibbs further advised John Urso that this payment and future payments he would require in order to guaranty work to Frontline would be shared with other Comcast executives, including Magnos, Browning and Mark.

23. Frontline refused to make this payment of $40,000, and subsequently, Frontline failed to receive continual and ongoing work from Comcast despite exceeding certain performance metrics required by the PVA and SOW.

24. In or around July 2010, Duane Gibbs contacted John Urso, and advised him that if Frontline paid Gibbs 3% of the gross value of a potential commercial contract, Gibbs and other Comcast executives would in turn award the contract to Frontline.

25. Frontline refused to make this payment, and was subsequently denied this commercial contract.

26. In or around September 2011, Dino Magnos of Comcast demanded a payment from Gina Urso, President of Frontline, for an alleged charitable cause; however Magnos requested the payment be made to him individually and directly.

27. Frontline refused to make this payment, and subsequently, Frontline's contract, not including the construction work, was cancelled in November of 2011.

28. On information and belief, Dino Magnos and other Comcast executives accepted payments from other contractors in exchange for an award of Frontline's construction business after November of 2011.

29. As a result of this common scheme of unlawful acts, and because of its refusal to partake therein, Frontline's contract was terminated after incurring significant business expenses, including, but not limited to, rental and purchase of equipment and vehicles, purchase of insurance, the hiring and firing of employees, and other common business expenses associated with fulfilling the terms of the PVA and SOWs with Comcast.

30. As a proximate result of the wrongful act of Comcast executives extorting payments for work for their own benefit, Frontline has suffered substantial monetary harm to be determined according to proof.

31. Frontline is informed and believes and thereon alleges that Comcast's executives conduct was willful, oppressive and malicious; accordingly, and because Comcast knew or should have known of the aforementioned conduct, Frontline is also entitled to punitive damages as is justified by the evidence.

WHEREFORE, Plaintiff prays for judgment as follows:

1. For compensatory damages according to proof at trial with interest thereon at the legal rate;

2. For special damages according to proof at trial together with interest thereon at the legal rate;

3. For punitive damages in an amount appropriate to punish the Defendants and to deter others from engaging in similar misconduct;

4. For reasonable attorneys' fees;

5. For costs of suit herein incurred; and

6. For such other relief as the court may deem proper.

          Respectfully submitted,

          FRONTLINE COMMUNICATIONS, INC.

By: *s/Richard J. Miller*

          One of its Attorneys

Richard J. Miller
Miller Law Firm, P.C.
1051 Perimeter Drive, Suite 400
Schaumburg, IL 60173
(847) 995-1205

Scott C. Polman
Law Office of Scott C. Polman
8130 N. Milwaukee Ave.
Niles, IL 60714
(847) 292-1989

*Counsel for Plaintiff FRONTLINE COMMUNICATIONS, INC.*